# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TIMOTHY LEE BYRD,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-379-RAW-SPS |
| | ) |
| **CAROLYN COLVIN,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Timothy Lee Byrd requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 16, 1963, and was forty-eight years old at the time of the administrative hearing (Tr. 46). He completed his GED, and has worked as a truck driver and a security guard (Tr. 31, 204). The claimant alleges that he has been unable to work since September 30, 2009, due to post-traumatic stress disorder (PTSD), short-term memory loss, mood swings, problems dealing with the public, heart problems, high blood pressure, high cholesterol, depression, and nightmares (Tr. 199).

## Procedural History

On November 30, 2009, the claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 106-110). His application was denied. ALJ Larry D. Shepherd conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 25, 2012. The Appeals Council denied review, so the ALJ's written opinion became the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of medium work, *see* 20 C.F.R. § 404.1567(c), *i. e.*, he could lift/carry fifty pounds occasionally and twenty-five pounds frequently, stand/walk/sit for six hours during an eight-hour workday, except that he was limited to occasionally climbing ramps/stairs,

balancing, stooping, kneeling, crouching, and crawling, and could not climb ladders, ropes, or scaffolds. Additionally, the ALJ found that the claimant could understand, remember, and carry out simple, routine, and repetitive tasks, and respond appropriately to supervisors, co-workers, and usual situations, but could not have contact with the general public. He further stated that the claimant could perform low-stress work (defined as occasional decision making and occasional changes in workplace settings), but that he could not work in tandem with others. The ALJ concluded that, although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, janitor, machine feeder, punch press operator, and food packer (Tr. 32).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly assess evidence that conflicted with his findings, and (ii) failing to properly develop his RFC with substantial evidence. The undersigned Magistrate Judge finds the ALJ *did* make a number of errors at step four, and the decision of the Commissioner should therefore be reversed.

The relevant medical evidence reveals that the claimant was diagnosed with hypertension on October 9, 2009 (Tr. 292). In 2003, the claimant was evaluated by the VA and assessed with PTSD with associated anxiety, stress, nightmares, moodiness, sleep problems, and difficulty with concentration and frustration, and a global assessment of functioning (GAF) score of 59 (Tr. 515). In concluding the assessment, Steven Fishkin, Ph.D. stated, "Overall, this vet's PTSD along with the associated phenomena

and his memory loss combine to produce considerable dysfunction in his social activities, in his work capacity, and in the quality of his life" (Tr. 516). The claimant's therapist Sharon Teafatiller completed a mental status intake form on June 29, 2004. She noted that the claimant exhibited excessive evidence of depression, an indicated sleep disturbance, low energy, and a recent loss of two friends (Tr. 517-518). She assessed him with PTSD and depressive disorder NOS, noted other physical medical impairments, and assigned him a GAF of 38, with a high in the past year of 42 (Tr. 522).

The claimant largely received treatment at the VA Medical Center, and a psychiatry note from January 7, 2009, indicates that he continued to have residual symptoms of mood and anxiety on his medications, and that his sleep was down and he still had nightmares (Tr. 312). Further records from the VA indicate that the claimant had a 70% service-connected disability related to his PTSD (Tr. 478).

On May 4, 2010, Dr. Jorg Pahl conducted a mental assessment of the claimant following a request by the VA. He determined that the claimant had an Axis I diagnosis of PTSD, major depressive disorder, and panic disorder, along with a GAF of 43 (Tr. 526). He noted that unemployment was the primary effect of his mental disorder, displayed by being easily frustrated, irritated, aggravated easily, and not liking to work with others because they annoy him (Tr. 526). As relevant, he noted that the claimant had difficulty establishing and maintaining effective work/school and social relationships because he does not work well with others, and further difficulty maintaining effective family role functioning because he does not communicate with his family (Tr. 527). He indicated that the claimant's prognosis was poor (Tr. 527).

On September 27, 2011, Keith Green, Ph.D., conducted a psychological evaluation of the claimant. He noted that the claimant's fund of knowledge was intact, he had impaired attention and pace but intact concentration and numerical reasoning, impaired abstract reasoning, and estimated that the claimant would fall within the low average range of general mental ability (Tr. 378). He then stated that the claimant could retain and carry out simple, detailed and more complex instructions, that his social relationships were limited and superficial, and that his activities of daily living were constricted and positive for needing assistance from others, but that his severity of impairment of functional psychological capacity for work was mild (Tr. 379). He assessed the claimant with PTSD and depressive disorder NOS by medical report, as well as cognitive disorder NOS and personality disorder NOS with borderline obsessive-compulsive and passive-aggressive features, and further indicated that the claimant's prognosis was poor (Tr. 379-380).

State reviewing physician Dr. Sally Varghese completed a Psychiatric Review Technique checklist, indicating that the claimant had moderate degrees of limitation in the three areas of functional limitations, and that he had no episodes of decompensation (Tr. 342). She also completed the more detailed Mental RFC assessment, finding that he was markedly limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public (Tr. 347). She then stated that the claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, cannot relate to the general public, and can adapt to a work situation (Tr. 348).

Dr. Johnaga Saidi completed a physical Medical Source Statement of the claimant's ability to perform work-related activities. He indicated that the claimant could lift up to fifty pounds frequently and carry up to twenty pounds frequently, noting that his range of motion was within normal limits but associated with stiffness (Tr. 358). Further, the claimant could sit up to six hours in an eight-hour workday, and stand/walk one hour, that he did not require a cane to ambulate, that he could frequently use his hands and feet, and that he could frequently climbs stairs and ramps, but only occasionally climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl (Tr. 359-361).

At the administrative hearing, the claimant testified that he uses a cane when his gout flares up, and that how much he smoked depended on how much sleep he got (Tr. 48, 50). He stated that he was fired from a job at Mercy Hospital due to his attitude, and that he had undergone testing as far back as 1994 as a result of his service in the Persian Gulf War (Tr. 51-52). He testified that the VA paid for his mental health counseling where he lived, and that he received treatment for PTSD, depression, and nightmares, giving the example that he had not slept well in the days leading up to this hearing (Tr. 53). He stated that on normal days, he usually gets about two to three hours of sleep per day; that he plays computer games, watches television, and reads during the day; and falls asleep during the day because he sleeps so poorly at night (Tr. 54-55). He stated that he has disorganized thoughts, that he lost his teeth after his service, and that he has developed muscle tremors in his arms and chest (Tr. 56-57). He testified that he believed he was exposed to biological or chemical agents during his service, and that over time he has become more irritable and had problems getting along with people (Tr. 60-61). He

said that he had been unable to allow his daughter to have friends over to the house, that he does not answer the phone or go out and spend time with family in the area, and that he rarely goes outside and feels most comfortable in the computer room in the back of his house (Tr. 63-65). He said that he wears clean clothes because his wife prepares them for him, that suicide has crossed his mind but he has not made any plans, and that any job he had would be affected by his lack of patience with people and the job itself (Tr. 66-67). During the hearing, the claimant's attorney asked the ALJ to take note that the muscles in the claimant's left forearm were "jumping," and the claimant attributed that to frustration, depression, and anxiety (Tr. 71). He testified that he can sweep and vacuum, but cannot wash dishes or do laundry due to his attention problems (Tr. 74-75).

In his written opinion, the ALJ found at step two that the claimant had the severe impairments of obesity, hypertension, depression, and PTSD (Tr. 21). At that step, he then stated that the hypertension was well-controlled with medication, that the claimant had worked for a number of years following his PTSD diagnosis, that a consultative physical examination was "essentially normal," that the claimant reported he was unable to work but that his medications controlled his symptoms except for nightmares, that he complained of depressive symptoms for years before alleging disability, and that Dr. Pahl's opinion further indicated that he did not meet the requirements for a finding of disability, even if the VA made such a finding. He then found that the claimant did not meet a listing. At step four, the ALJ summarized the claimant's hearing testimony and mentioned the claimant's wife's Third Party Function Report. The ALJ repeatedly noted the fact that the claimant had continued to work for a number of years following his

PTSD and depression diagnoses, gave the VA disability rating "little weight," and found the claimant not credible. He gave the state reviewing physician opinions "some weight," despite his disagreement with their findings that the claimant had no severe physical impairment. He gave consultative examiner Dr. Saidi's opinion little weight because treating records did not support his assessed limitations. The ALJ gave great weight to the state psychologist opinions as supported by the record as a whole as well as the claimant's reports that his medications control his PTSD, with the exception of continued nightmares, and did not mention Dr. Pahl's assessment at all. The ALJ found that the claimant was more limited than Dr. Green's assessment, but ultimately determined that the claimant was not disabled.

Here, the ALJ failed to properly assess the opinion evidence regarding the claimant's capabilities and mental limitations. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency

between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ noted at step two Dr. Pahl's assessment, but either misunderstood or misrepresented his findings. Dr. Pahl stated in one sentence that, mentally, the claimant would have occasional interference in performing activities of daily living (Tr. 527). He then stated, "He has difficulty establishing and maintaining effective work/school and social relationships because the vet does not work well with others due to his frustration and irritation" (Tr. 527). The ALJ interpreted the second statement as also being an "occasional" limitation (Tr. 23). The ALJ thus ignored Dr. Pahl's ultimately poor prognosis for the claimant, *then* did not even discuss the evaluation at step four, much less apply the proper analysis. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The ALJ further failed to even acknowledge the GAF scores contained in the record. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003),

"[a] GAF score of fifty or less . . . does suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004), *citing Oslin*, 69 Fed. Appx. at 947. Instead of simply ignoring GAF scores the ALJ should have determined whether the low GAF scores in the record were due to occupational factors and whether those outside the alleged disability dates served to inform those contained within that time frame. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) ("[T]he Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job [but] assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors."). *See also Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the six domains, yet he made no mention of [claimant's] GAF ratings. We agree . . . that he could not simply ignore this evidence.").

Because the ALJ failed to properly conduct a step four analysis, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus

RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**